1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

10
11
12
13
14
15
16

| | |
|---|---|
| **KIM M. ZAMBRANO** | ) NO. EDCV 16-586-KS |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| **NANCY A. BERRYHILL**,[1] **Acting** | ) |
| **Commissioner of Social Security,** | ) |
| **Defendant.** | ) |
| _____ | ) |

17
18

**INTRODUCTION**

19
20
21
22
23
24
25

Kim M. Zambrano ("Plaintiff") filed a Complaint on March 30, 2016, seeking review of the denial of her applications for a period of disability, disability insurance ("DI"), and supplemental security income ("SSI"). On April 28, 2016, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 8-10.) On February 2, 2017, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No 20.) Plaintiff seeks an order reversing the Commissioner's decision and ordering the

26
27
28

---

[1] The Court notes that Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court orders that the caption be amended to substitute Nancy A. Berryhill for Carolyn Colvin as the defendant in this action.

1

payment of benefits or, in the alternative, remanding for further proceedings.  (Joint Stip. at 14.)  The Commissioner requests that the ALJ's decision be affirmed or, in the alternative, remanded for further proceedings.  (*See id.* at 15-16.)  The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On July 5, 2012, Plaintiff, who was born on December 2, 1962, filed applications for a period of disability, DI, and SSI.[2]  (*See* Administrative Record ("AR") 220, 229.)  Plaintiff alleged disability commencing May 1, 2012 due to diabetes, anxiety, depression, chronic fibromyalgia, and insomnia.  (AR 252.)  Plaintiff previously worked as a child monitor (DOT 301.677-010) and home attendant (DOT 354.377-014).  (*Id.* 47; *see also id.* 253.)  After the Commissioner denied Plaintiff's applications initially (AR 87-88) and on reconsideration (*id.* 111-12), Plaintiff requested a hearing (*see id.* 131-32).  Administrative Law Judge Alan Markiewicz ("ALJ") held a hearing on January 9, 2014 (*id.* 54-86).  Plaintiff, who was represented by counsel, testified before the ALJ as did vocational expert ("VE") Sandra Fioretti.  (*See* AR 54-86.)   On January 31, 2014, the ALJ issued an unfavorable decision, denying Plaintiff's applications for DI and SSI.  (*Id.* 36-49.)  On July 1, 2015, the Appeals Council denied Plaintiff's request for review.  (*Id.* 14-16.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her May 1, 2012 alleged onset date.  (AR 38.)  The ALJ further found that Plaintiff had the following severe impairments:  fibromyalgia; disc disease of the cervical spine; diabetes; depressive disorder, not otherwise specified; and anxiety.  (*Id.*)  The ALJ also noted that

---

[2]     Plaintiff was 49 years old on the application date and thus met the agency's definition of a younger individual.  *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).

2

Plaintiff had a history of obesity.  (*Id.* at 38-39.)  The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926), and he explained his rationale for finding that Plaintiff's impairments did not meet or equal Listings 12.04 and 12.06.  (*Id.* 39-40.)  The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> [Plaintiff] can lift and/or carry 50 pounds occasionally and 25 pounds frequently; she can stand and/or walk for six hours out of an eight-hour workday; she can sit for six hours out of an eight-hour workday; she cannot climb ladders, ropes, or scaffolds; she can frequently climb ramps and stairs; she is limited to simple repetitive tasks; and she is limited to no more than occasional contact with coworkers and no contact with the general public.

(AR 40-41.)

The ALJ found that Plaintiff was unable to perform her past relevant work as a child monitor and home attendant.  (AT 47.)  However, the ALJ determined that Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including the representative occupations of kitchen helper (DOT 318.687-010), hand packager (DOT 920.587-018), and industrial cleaner (DOT 381.687-018).  (*Id.* 48-49.) Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through the date of the ALJ's decision.  (*Id.* at 49.)

\\

\\

\\

3

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error,

'the agency's path may reasonably be discerned.'"  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff alleges that the ALJ failed to properly evaluate the credibility of Plaintiff's subjective complaints and the credibility of the lay witness, Kimberly Victor, Plaintiff's daughter.  (Joint Stip. at 3.)

## I.   <u>Plaintiff's Credibility</u>

### A. Plaintiff's Subjective Complaints

The first issue in dispute is whether the ALJ properly evaluated the credibility of Plaintiff's statements about her symptoms and limitations.  (Joint Stip. at 3.)  In her Adult Function Report, dated September 10, 2012, Plaintiff stated that she cannot concentrate and experiences mood swings.  (AR 259.)  She finds it difficult to manage the pain from her fibromyalgia and experiences dizziness when she moves her head up or down.  (AR 259.) She can walk half a block before needing to rest for a period of five minutes.  (AR 264.)

Plaintiff finds cleaning and cooking to be painful and exhausting.  (AR 260.)  Plaintiff is responsible for caring for her husband and children by cooking, cleaning, and doing laundry, however her daughter has been helping her run errands, take care of the kids, and cook because Plaintiff is too exhausted.  (AR 260-61.)  Plaintiff stated that her daughter has been preparing all of the meals "lately."  (AR 261.)  When Plaintiff is able to cook, it takes her about 40 minutes to prepare a meal.  (AR 261.)  Plaintiff also indicated that she is able to wash and fold laundry but unable to carry a full laundry basket.  (*See* AR 261.)  Plaintiff stated that it takes her three hours to wash and fold the laundry.  (AR 261.)

Plaintiff's daughter sometimes helps Plaintiff get dressed when she is unable to do it herself.  (AR 260.)  Plaintiff stated that she "can't stand the pain to change clothes," "can't always wash [her] hair," her arms hurt when she washes her body, it is painful to brush her hair, and she gets dizzy when she bends down to shave her legs.  (AR 260.)

Plaintiff indicated that she is able to drive a car and shops three times a week for a period of 30 minutes to two hours.  (AR 262.)  Plaintiff stated that she tries to engage in the following activities "every day [or] as much as [she] can:"  going outside; sitting and talking; attending barbeques; watching TV; and visiting.  (AR 263.)  She stated that she goes shopping, to the doctor's office, and to friends' houses "on a regular basis," but she needs her daughter to accompany her "sometimes" when her anxiety or depression is bothering her.  (AR 263.)

At the January 9, 2014 hearing, Plaintiff testified that she was taking the following medications:  Norco; Cymbalta; Gabapentin; Benazepril; Metformin; Ibuprofen; Advair diskus; Alprazolam; Abilify; Hydroxyzine; and Robaxin.  (AR 67.)  She testified that "they keep changing my medication trying to get things under control, but they can't do it.  Once something seems like it's working, I just fall back again."  (AR 67.)  She testified that she can lift a gallon of milk very briefly (AR 69) and is unable to lift a laundry basket full of laundry (AR 70).  She estimated she could lift about five pounds.  (AR 70.)  She estimated that she could sit for 20 minutes without needing a break and could stand for 10 to 20 minutes without needing a break.  (AR 71.)  She testified that she has difficulty using her hands.  (AR 27.)  She also testified that the doctors told her not to look straight up or straight down.  (AR 81.)

Plaintiff described her depression and anxiety as "chronic but . . . worse now."  (AR 72.)  At around the time of her applications for DI and SSI, her head would spin and she would start crying over nothing.  (AR 72.)  She testified that she became unable to

concentrate on television shows and had the TV moved out of her room.  (AR 75.)  She testified that she cannot handle being around a lot of people.  (AR 74.)  She testified that she has an anxiety attack every day.  (AR 77.)  She takes medication for the anxiety attacks but the medication is not effective.  (AR 78.)  She testified that when she has an anxiety attack she needs to be by herself.  (AR 79.)  Sometimes she needs more than a day to recover from an anxiety attack.  (AR 79.)  Plaintiff also testified that she suffers from five 15-minute crying spells each week.  (AR 79-80.)

Plaintiff testified that spends "a good part of most of the days" in bed.  (AR 75.)  She testified that her daughter prepares all of the meals.  (AR 75.)  Plaintiff testified that she is able to drive "once in a while."  (AR 76.)  She goes shopping twice a week with her daughter.  (AR 76.)

## B.  Applicable Law

An ALJ must make two findings before determining that a claimant's pain or symptom testimony is not credible.  *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record.  *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (court must determine "whether the ALJ's adverse credibility finding . . . is supported by substantial evidence under the clear and convincing standard").

7

In weighing a plaintiff's credibility, the ALJ may consider many factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony . . . that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted).

The ALJ must also "specifically identify the testimony [from the claimant that] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1102 (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).  "General findings are insufficient."  *Brown-Hunter*, 806 F.3d at 493 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

### C. ALJ's Credibility Determination

The ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (AR 42.)  The ALJ based his adverse credibility determination on the following:  Plaintiff had received routine conservative treatment for her symptoms and limitations; Plaintiff's rheumatologist had described her as "noncompliant;" Plaintiff's reported interests, hobbies, and activities of daily living – *i.e.*, doing laundry, watching television, going grocery shopping twice a week, taking care of her personal needs without assistance, reading, spending time with others, and going to the movies or out to eat when able – were

8

inconsistent with her allegations; and Plaintiff's allegations were inconsistent with the objective medical evidence.  (AR 42.)

**D. Discussion**

1.   Routine Conservative Treatment

The ALJ found that Plaintiff had the following severe impairments:  fibromyalgia; disc disease of the cervical spine; diabetes; depressive disorder, not otherwise specified; and anxiety.  (AR 38.)  The ALJ also found that Plaintiff's complaints of debilitating symptoms and limitations resulting from these impairments were not credible because, *inter alia*, she received only routine and conservative treatment.  (AR 42.)  Plaintiff contends that "the record is void of any other suggested treatment for her diagnos[e]s . . . nor has the ALJ suggested that there would be some other form of treatment that might assist in the resolution of [Plaintiff's] conditions."  (Joint Stip. at 5.)  In her response, Defendant does not identify any more aggressive treatment that might be effective in addressing Petitioner's symptoms and limitations.  (*See generally* Joint Stip. at 13.)

The medical records also do not indicate that any more aggressive treatment was available.  On May 15, 2012, Babak Zamiri, M.D., F.A.C.P., F.A.C.R., Plaintiff's treating rheumatologist, emphasized the importance of regular exercise for managing Plaintiff's fibromyalgia and also encouraged her to use a CPAP (Continuous Positive Airway Pressure).  (AR 322.)  At an August 21, 2012 follow-up visit, Dr. Zamiri noted that Plaintiff was "unable to continue" with the CPAP machine because it was difficult to keep on.  (AR 334.)  He recommended a referral for an MRI of Plaintiff's cervical spine and stated that Plaintiff needed "better control of depression."  (*Id.*)  Dr. Zamiri adjusted Plaintiff's medications and told Plaintiff to return in four months.  (*Id.*)

9

On December 11, 2012, Dr. Zamiri recommended that Plaintiff's primary care physician refer her to a psychiatrist and psychologist.  (AR 395.)  He advised her that, because of her chronic pain, his office could not provide any additional pain therapy and she would need to be seen by a pain management group.  (AR 395.)  The record does not indicate that Plaintiff was referred to a pain management group or that Dr. Zamiri recommended that her primary care physician refer her to a pain management group.  (AR 395.)

On December 17, 2013, Dr. Zamiri remarked that Plaintiff was "non-compliant" before describing her symptoms.  (AR 475.)  However, Dr. Zamiri did not explain his statement that Plaintiff was "non-compliant" or identify any treatment regimen that Plaintiff had failed to follow.  (*Id.*)  Dr. Zamiri then recommended that Plaintiff's primary care physician refer Plaintiff to a pain management group.  (AR 476.)  At the hearing before the ALJ less than one month later, Plaintiff testified that she did not take Dr. Zamiri's advice to get a referral to pain management because she had tried pain management "years ago" and it made the pain "much worse."  (AR 69.)  She stated that "they told me [the pain management] was doing me more harm than like helping."  (AR 69.)

An ALJ may rely on the conservative nature of treatment or a lack of treatment in rejecting a claimant's subjective complaint of pain.  *Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007); *Johnson v. Shalala*, 60 F.3d 1428, 1433-34 (9th Cir. 1995).  However, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available."  *Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015) (citation omitted).  In addition, "[c]onservative treatment is not a proper basis for rejecting the claimant's credibility when the claimant has a good reason for not seeking more aggressive treatment."  *Gillman v. Astrue*, 829 F. Supp. 2d 999, 1008 (W.D. Wash. 2011) (citing *Orn*, 495 F.3d at 638).

10

Here, the ALJ, the Commissioner, and the record fail to identify any more aggressive treatment option that was available to Plaintiff, and the Center for Disease Control is similarly silent on the availability of a more aggressive treatment for fibromyalgia.[3]  *Cf. Reddick*, 157 F.3d at 727 ("the CDC has made it clear that no definitive treatment for [Chronic Fatigue Syndrome] exists"); *see also  Sharpe v. Colvin*, No. CV 13-01557 SS, 2013 WL 6483069, at *8 (C.D. Cal. Dec.10, 2013) ("surgery or other more radical options" are not available to treat fibromyalgia).  In the absence of any evidence in the record suggesting that a more aggressive treatment was available, the ALJ was not qualified to determine on his own that one existed.  *See Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (ALJ is not a medical expert); *see also Rohan v. Chater*, 98 F.3d 966, 970-71 (7th Cir. 1996) (ALJ may not rely on his or her own lay opinion regarding medical matters); *Moon*, 139 F. Supp. 3d at 1220.   Furthermore, the ALJ erred in characterizing Plaintiff's cocktail of approximately 10 different medications, including Abilify, an antipsychotic, Norco, an opioid pain medication, Cymbalta, an anti-depressant, and two different anti-anxiety medications, as "routine" and "conservative."  (*See* AR 67 (listing Plaintiff's medications at the time of the hearing as, *inter alia*:  Abilify, an antipsychotic; Cymbalta, an anti-depressant; Norco, an opioid pain medication; two anti-anxiety drugs, Alprazolam and Hydroxyzine; Gabapentin, for nerve pain; and Robaxin, to treat both muscle spasms and pain)); *cf. Sharpe*, 2013 WL 6483069, at *8 (Plaintiff did not receive "routine" treatment where she was "consistently and heavily medicated" with approximately nine different fibromyalgia or pain medications and "surgery or other more radical options" are not available to treat fibromyalgia).  Accordingly, the ALJ's finding that Plaintiff relied on "routine conservative" treatment is not a clear and convincing reason supported by substantial evidence in the record for discounting Plaintiff's subjective complaints.

\\

\\

---

[3]     The Center for Disease Control recommends the following treatments for fibromyalgia:  medication; exercise; relaxation techniques; and therapy.  *See* https://www.cdc.gov/arthritis/basics/fibromyalgia.htm (last visited Mar. 6, 2017).

2.    <u>Noncompliance</u>

The ALJ's second reason for finding Plaintiff's allegations less than fully credible was his determination that Plaintiff failed to follow treatment recommendations by her rheumatologist.   (AR 42.)   The ALJ cites Dr. Zamiri's comment that Plaintiff was "noncompliant" when she returned for a follow-up visit.  (AR 42) (citing AR 475 ("She is noncompliant and returns after one year.")).

"Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment may cast doubt on a claimant's subjective complaints." *Stone v. Astrue*, 804 F. Supp. 2d 975, 986 (D. Ariz. 2011) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  However, Dr. Zamiri does not state whether Plaintiff is, in fact, noncompliant with a prescribed treatment regimen.  His cursory statement that Plaintiff "is noncompliant and returns after one year" occurs in the context of his description of Plaintiff's present illness, does not refer to any particular aspect of Plaintiff's medical care, and is not clarified, repeated, or substantiated elsewhere in the record.  (*See generally* AR 42.)  "Ambiguous evidence," like Dr. Zamiri's conclusory remark, "triggers the ALJ's duty to conduct to 'conduct an appropriate inquiry.'"  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  Accordingly, in the absence of evidence that the ALJ asked Dr. Zamiri for an explanation of his vague reference to noncompliance and Dr. Zamiri responded that Plaintiff had failed to follow his recommended treatment regimen, the ALJ was not entitled to cite Dr. Zamiri's offhand remark as a specific, clear, and convincing reason supported by substantial evidence in the record for discounting Plaintiff's subjective complaints.

3.    <u>Activities of Daily Living</u>

The ALJ's third reason for discounting Plaintiff's subjective complaints was that Plaintiff reported hobbies and activities of daily living – namely, doing laundry, watching

12

television, going grocery shopping twice a week, taking care of her personal needs, reading, spending time with others, and going to the movies or out to eat – that the ALJ found were "not limited to the extent one would expect, given [Plaintiff's] complaints" and required many of the same physical and mental capabilities as those necessary for obtaining and maintaining employment.  (AR 42.)  A claimant's daily activities bear on her credibility only if the level of activity is inconsistent with her claimed limitations.  *See Reddick*, 157 F.3d at 722.  Thus, an ALJ may rely on a plaintiff's daily activities to support an adverse credibility determination only when those activities either:  "contradict [the plaintiff's] other testimony"; or "meet the threshold for transferable work skills" – that is, where the plaintiff "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting."  *Orn*, 495 F.3d at 639; *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996).  Here, the ALJ did not find that Plaintiff is able to spend a substantial part of her day performing activities that are transferable to a work setting, only that she is able to perform some activities that require capabilities necessary for obtaining and maintaining employment.   Accordingly, the ALJ's adverse credibility determination rests on his suggestion that Plaintiff's reported activities contradict her subjective complaints.   This suggestion, however, is not supported by substantial evidence in the record.

### a. Laundry and Shopping

The ALJ cited Plaintiff's ability to do the laundry as being inconsistent with her reported symptoms and limitations.  (AR 42.)  The record shows, however, that Plaintiff's impairments have limited her ability to do laundry independently.  Plaintiff stated in both her Adult Function Report and at the hearing that she was unable to do the laundry by herself because she is unable to lift a full laundry basket.  (AR 261 (able to wash and fold laundry but unable to carry a full laundry basket; it takes her three hours to wash and fold the laundry), AR 80 ("I have to leave [the laundry] inside of the washing machine and have my

daughter get the rest of it out").)  Similarly, the ALJ cited Plaintiff's testimony that she went shopping twice a week as being inconsistent with her reported symptoms and limitations, but Plaintiff testified that her daughter helps her on these trips.  (AR 76.)

### b. Personal Needs and Grooming

The ALJ also cited Plaintiff's ability to take care of her personal needs without assistance as being inconsistent with her reported symptoms and limitations.  Again, however, the preponderance of the evidence in the record showed that Plaintiff's impairments had curtailed her ability to take care of her personal needs independently.  In her July 5, 2012 applications for DI and SSI, Plaintiff stated that her impairments slowed her ability to take care of her personal needs.  (AR 294, 300.)  In her September 10, 2012 Adult Function Report, Plaintiff clarified that she "can't stand the pain to change clothes," "can't always wash [her] hair," her arms hurt when she washes her body, it is painful to brush her hair, and she gets dizzy when she bends down to shave her legs.  (AR 260.)  Plaintiff stated that there are times when her daughter has to help her get dressed because she is unable to do it herself.  (AR 260; *but see* AR 357 (October 25, 2012 – Plaintiff told the consulting psychiatrist that she is able to take care of her hygiene and grooming).)

### c. Hobbies, Interests, and Social Activities

The ALJ also cited several of the "hobbies" that Plaintiff reported on her Adult Function Report as being inconsistent with her reported symptoms and limitations.  (*See* AR 42 (identifying Plaintiff's hobbies as reading, going to the movies, and going out to eat), 263 (Plaintiff's hobbies on her Adult Function Report).)  However, there was no evidence in the record that Plaintiff read, went to the movies, or went out to eat on a daily or even on regular basis after the alleged onset date.  (*See generally* AR 263.)  Instead Plaintiff indicated that she performed these activities only when she was not "exhausted."  (AR 263.)

The ALJ also based his adverse credibility determination on Plaintiff's description of her social activities. (*See* AR 42.) At issue is Plaintiff's report in her 2012 Adult Function Report that she spent time with others by doing the following activities "every day as much as [she] can:" "go outside, sit and talk, barbeque, watch TV, just visit." (AR 263.) At the January 2014 hearing, Plaintiff added that she had lost the ability to concentrate on television shows, so she had the TV moved out of her bedroom. (AR 75.) She also testified that she no longer goes anywhere without her daughter (AR 76), cannot handle being around a lot of people (AR 74 ("a room full of people . . . drives me crazy")), has an anxiety attack every day and needs to be by herself to recover (AR 77, 79), and spends "a good part of most of the days" in bed (AR 75). Accordingly, Plaintiff reported a very limited social life, which was consistent with her reported symptoms and limitations. The Commissioner cannot require Plaintiff, a wife and mother of three school-aged children, to lose all motivation and capacity for engaging with her family and the outside world in order to credit her subjective complaints of debilitating symptoms and functional limitations. *Cf. Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.") (internal quotation marks and citation omitted)

Thus, while there may be clear and convincing reasons supported by substantial evidence for finding Plaintiff's subjective complaints less than fully credible, Plaintiff's reported daily activities neither contradict Plaintiff's subjective complaints nor establish that Plaintiff is able to spend a substantial part of her day performing activities that are transferable to a work setting. Accordingly, the ALJ erred in relying on Plaintiff's self-reported daily activities as a basis for his adverse credibility determination.

\\
\\
\\
\\

1

2

### 4.   Objective Medical Evidence

3

The ALJ's final basis for his adverse credibility determination is that Plaintiff's description of her symptoms and limitations are not supported by the objective medical evidence.  (AR 42.)  However, "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence."  *Rollins*, 261 F.3d at 857 (emphasis added) (citation omitted).  Accordingly, even if the Court assumes *arguendo* that the objective medical evidence of Plaintiff's fibromyalgia, depression, and anxiety is insufficient to support her description of her symptoms and limitations, this is not a legally sufficient basis for the ALJ's adverse credibility determination.  On remand the ALJ must revisit his adverse credibility determination and either find that Plaintiff's allegations are credible or articulate specific, clear, and convincing reasons supported by substantial evidence in the record for discounting a specified portion of her complaints.

## II.   **ALJ Improperly Evaluated The Statements Of The Lay Witness.**

### A. Statements Of The Lay Witness

The second issue in dispute is whether the ALJ properly evaluated the statements of the lay witness, Kimberly Victor, Plaintiff's 30-year old daughter.  On September 11, 2012, in connection with Plaintiff's applications for DI and SSI, Victor completed a Third Party Adult Function Report.  (AR 268-76.)  She stated that Plaintiff used to be "very independent and energetic' and still "tries to cook and do laundry" for her husband and three children.  (AR 269.)   However, Victor stated that she, rather than Plaintiff, is now primarily responsible for cleaning, cooking, doing the laundry, running errands, feeding the animals, and driving Plaintiff's school-aged children to and from school.  (AR 269.)  Victor stated that Plaintiff is able to prepare food or meals maybe once a month or once every two months.  (AR 270.)   Victor stated that Plaintiff can "sometimes" dress herself without

assistance, "has a hard time" bathing by herself, can "rarely" shave her legs because she gets dizzy, and "once in a while" needs help getting up from the toilet due to stiff legs and dizziness.  (AR 269.)  Victor stated that Plaintiff can do the laundry with Victor's help and encouragement (AR 270) but is unable to do house or yard work (AR 271).  Victor indicated that she is concerned for Plaintiff's safety when Plaintiff goes out alone.  (AR 271.)  Victor stated that she tries to take Plaintiff shopping daily to get Plaintiff walking around.  (AR 271.)  She stated that "shopping and family time" are Plaintiff's hobbies, and she does them whenever she feels well enough – "just not for a long time."  (AR 272.)  Victor stated that Plaintiff "used to do everything with the family" and be "very outgoing," but "now she's just weak and in pain and tired."  (AR 272.)  Victor indicated that Plaintiff is still able to speak on the phone or visit with friends and relatives one to two times per day (AR 272), but Plaintiff spends "less and less time with family and friends" (AR 273).  Victor stated that it is hard to get Plaintiff "out of her room/bed."  (AR 273.)

### B. ALJ's Decision And Discussion

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (internal quotation marks and citation omitted).  "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition."  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d), 416.913(d) ("[W]e may also use evidence from other sources to show the severity of your impairment(s). . . .  Other sources include, but are not limited to . . . non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy).").  Such testimony is competent evidence and "cannot be disregarded without comment."  *Bruce*, 557 F.3d at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal quotation marks omitted)).  When rejecting the testimony of a lay witness, an ALJ must give specific reasons that are

germane to that witness.  *Id.*  "The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony."  *Smolen*, 80 F.3d at 1289.

The ALJ found that Victor's statements "are not credible to the extent her statements are inconsistent with the residual functional capacity" he assessed – namely, that Plaintiff, a then 51-year old woman with fibromyalgia, degenerative disc disease, diabetes, and a history of obesity, retained the functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently and stand and/or walk for six hours out of an eight-hour workday.  (AR 43.)  The ALJ explained that Victor's statements "might have been influenced by a familial motivation to support [Plaintiff] as well as a financial interest in seeing [Plaintiff] receive benefits in order to increase the household income."  (AR 43.)  "Most importantly," the ALJ added, "[Victor's] statements are not supported by the clinical or diagnostic medical evidence."  (AR 43.)

Neither Plaintiff and Victor's familial relationship nor their cohabitation is a "germane" reason for rejecting any portion of Victor's statements.  *See Smolen*, 80 F.3d at 1289.  "To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; [and] such lay witnesses will often be family members."  *Id.* (citing *Dodrill*, 12 F.3d at 919).

An inconsistency with the objective medical evidence, on the other hand, *is* a germane reason for discounting a lay witness' statement so long as the ALJ's decision is supported by substantial evidence.  *See Lewis v. Apfel*, 236 F.3d 503, 511, 512 (9th Cir. 2001).  However, the ALJ identifies no inconsistency between Victor's statements and the medical evidence, and the Court was similarly unable to identify any such inconsistency in its review of the medical record.  Accordingly, the ALJ's determination that Victor's statements conflict with the objective medical evidence is not supported by substantial evidence.

Plaintiff underwent an initial rheumatology consultation on May 7, 2012.  (AR 43) (citing AR 323-24).  Dr. Zamiri's examination revealed 18/18 tender points of fibromyalgia and diffuse Heberden and Bouchard nodes.  (*Id.*; *see also* AR 324.)  Dr. Zamiri stated that Plaintiff has "generalized musculoskeletal pain which is likely to be associated with fibromyalgia."  (AR 324.)  The ALJ also notes that x-rays revealed thoracic spondylosis and, in the lumbar spine, mild disc space narrowing, spondylosis, and facet degenerative joint disease.  (AR 43) (citing AR 338, 341).  On August 21, 2012, following an x-ray of her cervical spine, Plaintiff was diagnosed with degenerative disc disease of the cervical spine.  (AR 44) (citing AR 334, 337).  A subsequent MRI of Plaintiff's cervical spine revealed: congenital shortening of the pedicles throughout the cervical spinal column; left lateral recess broad-band disc protrusion at C5-C6 causing moderate to severe left neural foraminal and lateral recess stenosis on the left side; slight flattening of the left lateral margin of the spinal cord; right lateral recess broad-based disc protrusion at C6-C7 causing mild to moderate right lateral recess and neural foraminal stenosis; left paracentral disc protrusion at C7-T1; and degenerative changes of the cervical spine.  (AR 44) (citing AR 397).  In sum, no inconsistency between Victor's statements and the results of Plaintiff's x-rays, MRIs, and physical examinations is readily apparent.  Accordingly, the ALJ's determination that Victor's statements are not credible because they conflict with the objective medical evidence is not a determination supported by substantial evidence in the record, and the ALJ must revisit his assessment of Victor's credibility on remand.

## III.   Remand Is Warranted.

In light of the ALJ's errors, the matter must be remanded.  The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  Under the credit-as-true rule, a district court may remand for an award of benefits when the following three conditions are satisfied:  "(1) the record has been fully developed and further

administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). The third of these conditions "incorporates . . . a distinct requirement of the credit-as-true rule, namely that there are no outstanding issues that must be resolved before a determination of disability can be made." *Id.* n.26. However, even if those three requirements are met, the Court retains "flexibility" in determining the appropriate remedy and may remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (quoting *Garrison*, 759 F.3d at 1021).

Here, it is not clear from the record that, if the ALJ credited the statements of Plaintiff and Victor, he would be required to find Plaintiff disabled on remand. Accordingly, the Court remands for further development of the record, including the proper consideration of the statements and testimony of Plaintiff and any lay witnesses.

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

\\

\\

\\

\\

1

2      IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this

3   Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for

4   defendant.

5

6      LET JUDGMENT BE ENTERED ACCORDINGLY.

7

8   DATE: March 9, 2017

9

10                                    _____

11                                    KAREN L. STEVENSON
                                      UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28